UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
LUKAS E. QUINTIN and YEHYA FARES,

                    Plaintiffs,             <u>MEMORANDUM & ORDER</u>
                                            18-CV-5852 (JS)(ARL)

    -against-

COUNTY OF NASSAU; NASSAU COUNTY
POLICE DEPARTMENT; DETECTIVE
JOSEPH HILL, in his individual and
official capacities; OFFICERS
ROBERT CANDELA, EDWARD MERCEDES,
in their individual and official
capacities,

                    Defendants.
--------------------------------X
APPEARANCES
For Plaintiffs:      Guido Moreira, Esq.
                    Law Office of Guido Moreira
                    6804 Bliss Terrace
                    Brooklyn, New York 11220

                    Christopher H. Fitzgerald, Esq.
                    Law Office of Christopher H. Fitzgerald
                    233 Broadway, Suite 2348
                    New York, New York 10279

For Defendants:      Andrew Robert Fuchs, Esq.
                    Jeremy James Scileppi, Esq.
                    Laurel R. Kretzing, Esq.
                    Office of the Nassau County Attorney
                    1 West Street
                    Mineola, New York 11501

SEYBERT, District Judge:

        Lukas Quintin ("Quintin") and Yehya Fares ("Fares")

(collectively, "Plaintiffs") commenced this action against the

County of Nassau (the "County"), the Nassau County Police

Department ("NCPD"), Detective Joseph Hill ("Hill"), Officer

Robert Candela ("Candela"), and Officer Edward Mercedes ("Mercedes") (collectively, "Defendants"), asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for false arrest, failure to intervene, and municipal liability. (See generally Am. Compl., ECF No. 29.)  Pending before the Court is Defendants' motion for summary judgment, which Plaintiffs oppose. (See Defs. Mot., ECF No. 32; Support Memo, ECF No. 34; Opp'n, ECF No. 38; Reply, ECF No. 39.)  For the following reasons, Defendants' motion is GRANTED.

## FACTUAL BACKGROUND[1]

On October 10, 2016 at approximately 10:00 a.m., agents from the Drug Enforcement Administration ("DEA") Enforcement Group met with detectives from the NCPD at a precinct in Westbury, New York. (See DEA Report of Investigation ("DEA Report") ¶ 1, ECF No. 36.)  Present at the briefing was DEA agent "CS," whose identity is classified. (Id. ¶ 1; Defs. 56.1 Stmt. ¶ 8.)  At 11:30 a.m., agents and detectives established surveillance in the vicinity of a Staples parking lot in Jericho, New York, in

---

[1] The facts are drawn from Defendants' Local Rule 56.1 Statement and Plaintiffs' Local Rule 56.1 Counterstatement. (See Defs. 56.1 Stmt., ECF No. 35; Pls. 56.1 Counterstmt., ECF No. 24-2.)  The Court notes any relevant factual disputes.  Unless otherwise stated, a standalone citation to a Local Rule 56.1 Statement or Counterstatement denotes that either the parties agree or the Court has determined that the underlying factual allegation is undisputed.  Citation to a party's Local Rule 56.1 Statement or Counterstatement incorporates by reference the document(s) cited therein.

anticipation of a meet between CS and an unidentified individual for the purpose of purchasing synthetic cannabinoids. (DEA Report ¶ 3.) CS was also in contact with "other subjects" discussing drug transactions from September 14, 2016 through October 11, 2016. (Id.)

Surveillance was re-established at 1:00 p.m. in anticipation of another meet between CS and an unidentified individual. (Defs. 56.1 Stmt. ¶ 11; DEA Report ¶ 8.) Fifteen minutes later, Agents Calcano and Abbattiscianni observed a Silver Ford Escape (the "Silver Ford"), with a Virginia registration and four male occupants, approach CS's vehicle. (Defs. 56.1 Stmt. ¶ 12.) The four males were later identified as Plaintiffs Quintin and Fares, as well as Bakhos Maroun ("Maroun") and Luis Delvalle-Vasquez ("Delvalle-Vasquez"). (Id.) Agents Calcano and Abbattiscianni observed Maroun exit the front, passenger-side door of the Silver Ford and approach the driver's door of CS's vehicle. (Id. ¶ 13.) After CS and Maroun had a brief conversation, Maroun returned to the Silver Ford which then began to follow CS's vehicle. (Id.) Then, at approximately 1:20 p.m., Defendants Candela and Mercedes, both NCPD detectives, conducted a DEA-directed stop of the Silver Ford. (Id. ¶ 14.) Shortly thereafter, Detective Schmit and Agent Popowicz joined Candela and Mercedes in the stop. (Id.) It was at this point that law enforcement identified the Silver Ford's occupants, with Plaintiff Quintin as

3

the driver and Plaintiff Fares as a passenger in the rear. (Id. ¶ 15.)

It is undisputed that all occupants of the Silver Ford provided the officers with verbal consent to search the vehicle. (Id. ¶ 16; Pls. 56.1 Counterstmt. ¶ 16.)   During the search, officers observed a black plastic bag on the floor mat in the front, passenger-side of the vehicle which contained a large amount of money. (Defs. 56.1 Stmt. ¶ 17.)   Agent Popowicz asked who owned the money and Plaintiff Fares claimed it, stating there was approximately $16,000 in the bag and that he had an additional $6,000 on his person.   (Id.)   According to the Amended Complaint, Fares is the owner of a grocery store and gas station called "Stop and Save" in New Bedford, Massachusetts. (Am. Compl. ¶ 18.)   Fares told Agent Popowicz that he had the money to "purchase clothes, and other merchandise, to sell back in Massachusetts." (Defs. 56.1 Stmt. ¶ 17.)   Agent Popowicz seized the money as "drug proceeds," which was ultimately deposited into the "High Value Seized Item Vault" at the DEA's New Jersey Division.[2]   (Id. ¶ 18.) All four occupants of the Silver Ford were then arrested, transported to the NCPD, and charged with conspiracy to distribute

---

[2] Altogether, the DEA seized $25,200.00 from Fares. (Defs. 56.1 Stmt. ¶ 25.)   The DEA posted notice of the seized property on Forfeiture.gov and mailed notice to each occupant of the Silver Ford; however, nobody filed a claim to the property which resulted in a forfeiture of the full amount to the United States. (See id. ¶¶ 26-28.)

synthetic cannabinoids.  (Id. ¶ 19.)  Each of them was released "pending future federal proceedings"; however, Plaintiffs were never prosecuted or charged with any federal crimes. (Id. ¶¶ 19-20.)

## PROCEDURAL HISTORY

Plaintiffs commenced this action on October 18, 2018 against the County and numerous John Doe police officers and supervisory officers.  (See generally Compl., ECF No. 1.)  With the Court's leave, Plaintiffs filed an Amended Complaint on August 27, 2020 to amend the caption to include the names of the officers involved in the allegations at issue.  (See Aug. 3 & 18, 2020 Elec. Orders; Am. Compl.)  On September 9, 2020, Defendants filed an Answer to the Amended Complaint.  (See Answer, ECF No. 31.)  The instant summary judgment motion followed.

## ANALYSIS

### I.   Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 164 (2d Cir. 2020) (quoting Coppola v. Bear Stearns & Co., 499

F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted). The movant bears the burden of establishing that there are no genuine issues of material fact in dispute.  CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial."  Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted).  Conclusory allegations or denials will not defeat summary judgment.  Id.

In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).  The Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits."  Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

II.  Discussion

Plaintiffs have brought claims for false arrest and failure to intervene against the individual Defendants as well as a claim for municipal liability against the County.  As an initial

matter, to the extent any of Plaintiffs' claims are asserted against the Nassau County Police Department, those claims are DISMISSED because the NCPD is a non-suable entity that does not have a legal identity separate and distinct from the County. Anderson v. Inc. Vill. of Hempstead, No. 15-CV-1485, 2022 WL 267875, at *5, n.4 (E.D.N.Y. Jan. 28, 2022).

Moreover, to the extent Plaintiffs assert claims against Defendant Hill, those claims are also DISMISSED. Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States. See 42 U.S.C. § 1983; Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). Further, it is well-settled that to establish liability under Section 1983, a plaintiff must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution,'" that is, personally participated in the alleged constitutional deprivation. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)) (rejecting "special rule for supervisory liability" and

holding constitutional violations "must be established against the supervisory official directly").  The competent evidence before the Court does not leave any indication that Defendant Hill had any personal involvement of the "alleged constitutional deprivations" Plaintiffs complain of, which "is a prerequisite to an award of damages under § 1983."  See Barnes v. Malavi, 412 F. Supp. 3d 140, 144 (E.D.N.Y. 2019) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

The Court turns to Plaintiffs' remaining claims against Candela, Mercedes, and the County.

A.    False Arrest

1.    Applicable Law

To succeed on a Section 1983 claim for false arrest, the plaintiff must show "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *4 (E.D.N.Y. May 18, 2021) (quoting Wheeler v. Kolek, No. 16-CV-7441, 2020 WL 6726947, at *4 (S.D.N.Y. Nov. 16, 2020)).  The existence of probable cause is a complete defense to a claim for false arrest.  Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012).

At the arrest stage, the Second Circuit has described probable cause as "knowledge or reasonably trustworthy information

of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013) (quoting Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006)).   "To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.'"  Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021) (quoting Stansbury, 721 F.3d at 89). "'[S]ubjective intentions' of the arresting officer 'play no role in ordinary, probable cause Fourth Amendment analysis.'" Selvaggio v. Patterson, 93 F. Supp. 3d 54, 67 (E.D.N.Y. 2015) (quoting Whren v. United States, 517 U.S. 806, 813 (1996)).

      2.   Application

      In their motion for summary judgment, Defendants do not contest the first three elements of Plaintiffs' false arrest claim. (See Support Memo at 7.)  Rather, Defendants argue that this claim fails because probable cause existed to conduct a traffic stop and arrest Plaintiffs based upon the representations made to them by the DEA.   (Id.)   To rebut Defendants' probable cause defense, Plaintiffs contend:  (1) the DEA never communicated to Defendants that probable cause existed; (2) the DEA's direction for Defendants to stop the Silver Ford is not the "equivalent of communicating probable cause for an arrest" because a traffic stop is only supported by reasonable suspicion; and (3) Defendants did not

"develop probable cause to arrest . . . [P]laintiffs based on the results of the traffic stop." (Opp'n at 3-5.)  However, each of Plaintiffs' arguments misses the mark.

Pursuant to the "collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001) (citing United States v. Hensley, 469 U.S. 221, 230-33 (1985)).  "The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986); see also United States v. Fleming, No. 18-CR-0197, 2019 WL 486073, at *7 (E.D.N.Y. Feb. 6, 2019) ("Under [the collective knowledge] doctrine, a police officer may act reasonably in relying on information from other law enforcement officers, even if he is not personally aware of the facts that provided the probable cause underlying the information he received." (citing Colon, 250 F.3d at 135)).

In view of these principles, Defendants contend that the instant case is analogous to Williams v. City of New York, which involved arrests made following a "buy and bust" operation. See 409 F. Supp. 3d 137, 140 (E.D.N.Y. 2019). In Williams, while two undercover officers were taking a lunch break at a fast-food restaurant, the plaintiff arrived at the restaurant and gave his son an envelope containing cash. Id. at 140. The undercover officers observed the plaintiff "remove a dark, shiny object, which looked like it was wrapped in a plastic bag, from his pants pocket." Id. The plaintiff then gave this object to his son who placed it in his right waist area, leading the undercover officers to believe the exchange was a hand-to-hand narcotics transaction. Id. After the exchange, the plaintiff left the restaurant by foot; his son left by car. Id. at 141. The undercover officers then called in their observations to a sergeant, who was riding in an NYPD vehicle with two detectives and consequently, relayed the information to the detectives. One of the detectives found the plaintiff walking, stopped and frisked him and found no contraband, but executed an arrest. Id. The sergeant and other detective stopped the son's vehicle in the restaurant parking lot, found a firearm and ammunition on his person, and arrested him as well. Id. No other contraband was found, except that another officer recovered $4,375 in cash from the vehicle the son was in. Id. The sergeant then made the decision to arrest the plaintiff and

his son; however, one of the detectives was assigned as the "arresting officer." Id. The plaintiff was charged with criminal possession of a weapon and ammunition, but that charge was dismissed on speedy-trial grounds. Id. Charges against the son proceeded separately in federal court. Id. In granting the "arresting" detective's motion for summary judgment on the plaintiff's false arrest claim, the Williams court held probable cause for the plaintiff's arrest existed because the detective was entitled to rely upon the allegations relayed to him by the sergeant from the undercover officers. Id. at 142-43.

Here, the Court similarly finds that Defendants are entitled to summary judgment. The DEA conducted a sting operation with the assistance of the NCPD regarding the sale of synthetic cannabinoids at a location where law enforcement had reason to believe such a sale would take place due to the involvement of an undercover DEA agent, and individuals, including Plaintiffs, who met the undercover agent at this location and proceeded to follow the agent's vehicle. Then, after observing these events, the DEA contacted Defendants Candela and Mercedes -- who are NCPD officers -- and instructed them to stop Plaintiffs' vehicle. Plaintiffs contend that the DEA's operation did not supply probable cause to arrest them (see Opp'n at 4); however, whether the DEA had probable cause to arrest Plaintiffs or explicitly told Defendants probable cause to arrest existed is not the pertinent

inquiry.  Plaintiffs have not proffered any competent evidence to create an issue of material fact as to why it could have been unreasonable for Defendants to rely upon the information provided to them by the DEA to stop the Silver Ford and consequently arrest Plaintiffs.  In fact, Plaintiffs did not submit a single exhibit in opposition to Defendants' motion.  Moreover, to the extent Plaintiffs argue that no illegal contraband was found in their vehicle (Opp'n at 4), the fact that no drugs "were subsequently recovered from [Plaintiffs] is immaterial to the probable cause-analysis, which turns on only 'those facts available to the officer at the time of the arrest and immediately before it.'"  Williams, 409 F. Supp. 3d at 143 (quoting Panetta v. Crowley, 460 F.2d 388, 395 (2d Cir. 2006)).  As such, for the reasons the arresting detective in Williams was entitled to rely upon the information provided by the undercover officers, Defendants here were entitled to rely upon CS's instruction to stop Plaintiffs' vehicle and consequently arrest them.  In addition, the Court also notes that prior to arresting Plaintiffs, Defendants recovered a large sum of cash from Fares which is an another fact that lends further support to the existence of probable cause.  Accordingly, Defendants' motion for summary judgment as to Plaintiffs' claim for false arrest is GRANTED.

B.  Failure to Intervene

Plaintiffs' failure to intervene claim "is grounded in the widely recognized rule that 'all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Matthews v. City of New York, 889 F. Supp. 2d 418, 443 (E.D.N.Y. 2012) (quoting Anderson v. Branen, 17, F.3d 552, 557 (2d Cir. 1994)).  However, a "failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." Id. (citing Coleman v. City of New York, No. 07-CV-1051, 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010)).  In light of the Court's finding that probable cause to arrest Plaintiffs existed, their claim for failure to intervene necessarily fails as well.  See Williams, 409 F. Supp. 3d at 143 (citing Simcoe v. Gray, 670 F. App'x 725, 727 (2d Cir. 2016)).  Accordingly, Defendants' motion for summary judgment as to Plaintiffs' failure to intervene claim is GRANTED.[3]

---

[3]  In their Opposition, Plaintiffs fail to address their failure to intervene claim.  As such, even if the Court found that Defendants were not entitled to summary judgment on Plaintiffs' false arrest claim, the Court would still dismiss this claim as abandoned.  See Avola v. Louisiana-Pac. Corp., 991 F. Supp. 2d 381, 390 (E.D.N.Y. 2013); see also Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned and summary judgment could be granted on that basis alone.").

C.   <u>Qualified Immunity</u>

Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions only where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Wallace v. Suffolk County Police Dep't</u>, 396 F. Supp. 2d 251, 265 (E.D.N.Y. 2005) (Seybert, J.) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity applies, courts consider "whether the facts shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." <u>Tankleff v. County of Suffolk</u>, No. 09-CV-1207, 2017 WL 2729084, at *17 (E.D.N.Y. June 23, 2017) (quoting <u>Estate of Devine v. Fusaro</u>, 676 F. App'x 61, 62 (2d Cir. 2017) (cleaned up)).  Whether a right was clearly established should be analyzed from the perspective of a reasonable official, and the relevant inquiry is whether "it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." <u>Id.</u> (quoting <u>Devine</u>, 676 F. App'x at 63).

Because the Court has concluded Plaintiffs' rights were not violated, it need not address the issue of qualified immunity. <u>Bonhag v. Colavita</u>, No. 07-CV-5714, 2010 WL 6243308, at *10 (S.D.N.Y. Oct. 12, 2010).  However, even if the Court reached the

opposite conclusion, it would still find that Defendants Candella and Mercedes were entitled to qualified immunity because it was objectively reasonable for them to determine probable cause to arrest Plaintiffs existed based upon the DEA's direction to stop Plaintiffs' vehicle following the "sting operation" coupled with their discovery of thousands of dollars in cash on Plaintiff Fares' person and in the Silver Ford that Plaintiffs' occupied.

D.   Municipal Liability

It is well established that a municipality such as the County cannot be held liable under Section 1983 on a respondeat superior theory.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).   Rather, the plaintiff must demonstrate the municipality, through its deliberate conduct, "was the moving force behind the alleged injury." Roe, 542 F.3d at 37.  To that end, a plaintiff must plead and prove three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Lucente v. County of Suffolk, 980 F.3d 284, 297 (2d Cir. 2020) (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)).

As discussed above, Plaintiffs cannot prevail on their Section 1983 claims against the individual defendants, Candela and Mercedes.  Thus, because "no underlying constitutional violation was committed, no liability against [the] County under Monell can

exist as a matter of law." <u>Leogrande v. Suffolk County</u>, No. 08-CV-3088, 2016 WL 889737, at *7 (E.D.N.Y. Mar. 9, 2016) (citing <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006)); <u>see also</u> <u>Hirsch v. New York</u>, 751 F. App'x 111, 116 (2d Cir. 2018) ("Because the district court properly found no underlying constitutional violation, its decision not [to] address the municipal defendants' liability under <u>Monell</u> was entirely correct." (citing <u>Segal</u>, 459 F.3d at 219)).  Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiffs' claim for municipal liability against the County.

CONCLUSION

For the stated reasons, IT IS HEREBY ORDERED that Defendants' motion for summary judgment (ECF No. 32) is GRANTED. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 25, 2022
        Central Islip, New York